## Case No. 12,021.

### ROGERS et al. v. The S. B. WHEELER.

[4 Cliff. 189.] [1]

Circuit Court, D. Massachusetts. May Term, 1872.[2]

COLLISION—RIGHT OF WAY—CHANGE OF COURSE.

1. The vessel of the libellants was sailing close-hauled on the wind, on her starboard tack; that of the respondents had the wind free. Both had proper signal lights and lookouts. When at a distance of about a mile from each other they were approaching nearly head on. Both vessels kept their courses until within one hundred and fifty feet of each other. The vessel of the libellants was to the windward. When very close together the libellants put their wheel hard up, and at the same time the respondents' vessel fell off, and the collision ensued. *Held*, libellants were in fault in changing their course.

2. The vessels were in such position that, if no change had been made by either, they would have passed each other in safety.

3. All rules of navigation must be construed with due regard to the dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from a rule necessary in order to avoid immediate danger.

[Appeal from the district court of the United States for the district of Massachusetts.]

Compensation was claimed by the libellants [Henry C. Rogers and others] for the total loss of the schooner Charles F. Beebee, valued in the libel at $3,500, and for the loss of her cargo, consisting of fresh halibut, valued at $1,000; and also for the loss of certain books and nautical instruments, which were on board the schooner, and for the loss of the clothing belonging to the officers and crew of the schooner, which was also on board at the time of the disaster, amounting in the whole, as alleged in the libel, to the sum of $5,050. Service was made, and the claimants [William S. Hillis and others] appeared and filed an answer, in which they admitted that between twelve and one o'clock, on the morning of the day alleged in the libel, a collision oc-

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 20 Wall. (87 U. S.) 385.]

curred between the two schooners named, and that the schooner of the libellants was sunk; they also admitted that the place where the collision took place (eight miles north-easterly from Gay Head), was correctly stated in the libel; and that the wind was northwest, as alleged by the libellants. Some other material facts were also admitted in the answer, as, for example, that the night was clear, that the schooner of the libellants was sailing close-hauled on the wind, on her starboard tack, and that the schooner of the respondents was sailing with the wind free; and the evidence showed that each of the vessels had proper lookouts, and that they showed the signal-lights required by law. Concurring, as the libel and answer did, in these respects, it was assumed that those several matters were correctly stated in the pleadings. By the pleadings it also appeared that the schooner of the libellants,—a vessel of about forty-one tons, new measurement,—was bound on a voyage from Nova Scotia to New York, and that the schooner of the claimants,—a vessel of two hundred and sixty-four tons, new measurement,—was bound on a voyage from the port of Philadelphia to the port of Boston, laden with a cargo of coal; both vessels were in good repair, and were well manned and equipped. When first seen by each other, they were approaching from opposite directions nearly end on, within the meaning of that phrase as employed in the sailing rules enacted by congress; and it was equally clear that they were sufficiently distant, at that time, to have enabled each to have adopted the necessary precautions to have avoided a collision. Testimony was taken on both sides in the district court, and that court, being of opinion that the schooner of the libellants was in fault, entered a decree for the respondents, and dismissed the libel with costs [case unreported], whereupon the libellants appealed to this court. Two additional depositions were taken since the appeal, but the general aspect of the controversy was not changed from what it was in the court where the libel was filed.

John C. Dodge, for libellants, appellants.

G. A. Somerby and L. S. Dabney, for claimants, appellees.

CLIFFORD, Circuit Justice. Widely different views are entertained by the parties, as to what occurred throughout the whole period which elapsed from the time the two vessels were seen by each other, to the time the collision took place. On the part of the libellants, it is insisted that their schooner was to the leeward of the schooner of the claimants, and that she was proceeding on her voyage, close-hauled on the wind; that those in charge of her first saw the schooner of the claimants a point or a point and a half on her starboard bow; that the vessels were, at that time, a mile apart; that both vessels kept their course until they approached within about one hundred and fifty feet of each oth-

er, when those in charge of the libellants' schooner perceived that the schooner of the claimants had changed her course, and was coming down upon their vessel; that it then being impossible for the vessel of the libellants to get to the windward of the vessel of the claimants, those in charge of the libellants' vessel put the wheel hard up, as the only thing which they could do with any hope of avoiding a collision, but that the precaution was unsuccessful, as the vessel of the claimants also changed her course, and she fell off at the same time. Several of those statements are denied by the claimants, as for example, they insist that the vessel of the libellants was to the windward of their vessel when their lookout descried the red light of the libellants' schooner nearly a mile ahead, and that the master immediately gave the order to keep the vessel off a little, and that the order was obeyed.

Assuming that the schooner of the libellants was to the windward, the order was a proper one, as it gave the approaching vessel a wider berth, and it cannot be doubted, if the vessel of the claimants was to the leeward, that the collision would have been avoided if the vessel of the libellants had not changed her course; but the claimants allege that she kept her course until the two vessels were within a hundred and fifty feet of each other, when she suddenly ported her helm and fell off to leeward. Each party claims to have been to the leeward, and charges that the other was so far to the windward that if there had been no change of course the two vessels would have passed each other in safety, and no doubt is entertained that both parties are right in supposing that the collision would have been avoided if no change had been made by either after the execution of the first order given by the master of the claimants' vessel.

Where two sailing ships are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both should be put to port, so that each may pass on the port side of the other. Such is the general rule as established by the act of congress, and the decisions of the supreme court; but in obeying and construing that rule, as well as several others, due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case, rendering a departure from the rule necessary in order to avoid immediate danger. Attempt is made to bring the case within those exceptional principles, but the evidence, taken as a whole, disproves every such theory, and shows that the vessel of the libellants was to the windward of the vessel of the claimants, and that the conclusion of the district court was correct. Concurring as I do with the district judge, both in his conclusion and in the reasons assigned in its support, it does not seem necessary to analyze the testimony, or to enter more fully into a discussion of the subject. Decree affirmed, with costs.

[On appeal to the supreme court the decree of this court was affirmed. 20 Wall. (87 U. S.) 385.]